**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JALAAL PEOPLES,

                        Petitioner,

      v.                                          No. 9:17-CV-0625
                                                       (BKS/CFH)

JOSEPH NOETH,

                        Respondent.

---

**APPEARANCES:**                                      **OF COUNSEL:**

Jalaal Peoples
95-B-2699
Attica Correctional Facility
Box 149
Attica, New York 14011
Petitioner pro se

New York State Attorney                        LISA E. FLEISCHMANN, ESQ.
General – New York Office                       Assistant Attorney General
28 Liberty Street
New York, New York 10005
Attorneys for respondent

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

      Petitioner pro se Jalaal Peoples, an inmate in the custody of New York Department of Corrections and Community Supervision ("DOCCS") brings this action pursuant to 28 U.S.C. § 2254, alleging that (1) his trial counsel was ineffective for failing to file a notice of appeal from an assault conviction on his behalf; and (2) the Appellate Division, Third Department improperly denied the petitioner's motion for coram nobis relief. See Dkt. No. 1 ("Pet.") at 5-8. Petitioner also claims that "[t]he one-year statute

1

of limitations pursuant to 28 U.S.C. § 2244(d) does not procedurally bar this application/petition as the petitioner was unjustly and illegally denied a direct appeal." Id. at 13. On April 13, 1997, while serving a sentence of twenty-five-years-to-life, petitioner was charged with assault in the second degree and assault on a peace officer by a Greene County Grand Jury. See Dkt. No. 5-1 ("Resp. Mem. of Law") at 3-4; Pet. at 1. On November 25, 1997, petitioner was sentenced to five years imprisonment to run consecutively with the sentence petitioner was serving at the time of the assault. See Dkt. No. 6 at 14-15. On August 17, 2016, petitioner submitted a pro se CPL 440.10 motion to vacate his conviction on the ground of ineffective assistance of counsel, which was denied on October 19, 2016.[1] See id. at 45-46. On November 28, 2016, petitioner filed a pro se writ of error coram nobis motion in the Appellate Division, Third Department, arguing that he had been deprived of his right to effective counsel due to his counsel's failure to file notice of appeal. See id. at 49. The Appellate Division denied the motion on January 19, 2017. Id. at 65. On February 27, 2017, petitioner applied for leave to the New York Court of Appeals seeking review of the denial of the CPL 440.10 motion and the denial of the writ of coram nobis. See Pet. at 4. Leave was denied on May 4, 2017. Id. at 16. Presently pending before the court is the petitioner's May 26, 2017 petition for a writ of habeas corpus.[2] See Pet. Respondent opposes the writ, and petitioner filed a traverse. Dkt. Nos. 5, 12. For the reasons that follow, it is recommended that the petition be denied.

---

[1] Petitioner states that his CPL 440.10 motion was transferred to the Columbia County Court and denied on October 28, 2016. Pet at 6. Petitioner's exhibit shows the motion as having been denied by the Greene County Court on October 19, 2016. Dkt. No. 1 at 16.

[2] Under the "mailbox rule," a pro se petitioner is deemed to have filed a Habeas Corpus petition on the date the petition is turned over to prison officials for mailing. See Houston v. Lack, 847 U.S. 266, 270 (1988); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001).

## I. Background

On April 23, 1997, while serving a sentence in Coxsackie Correctional Facility, petitioner was indicted for an attack on a corrections officer. See Dkt. No. 6 at 4. Petitioner was charged with assault in the second degree and assault on a Peace Officer in Greene County Court. Id. at 3. Greg Lubow, Esq. was appointed from the county public defender's office to represent petitioner. See Dkt. No. 9 at 6, 7. At some point, petitioner sent two letters to Mr. Lubow expressing his displeasure with Mr. Lubow's lack of communication and his desire for Mr. Lubow to withdraw from the case. See Dkt. No. 6. at 7.[3] On September 18, 1997, the prosecution offered petitioner a plea, and the court gave the petitioner until October 18, 1997 to respond. See Dkt. No. 9 at 5-6.[4] On October 15, 1997, petitioner and Mr. Lubow appeared before the Hon. Daniel Lalor, and Mr. Lubow requested to be relieved as petitioner's attorney. Dkt. No. 9 at 5-6; see Dkt. No. 6 at 11. After an in-camera conversation with the judge and a brief recess, petitioner entered guilty to assault in the second degree. Dkt. No. 9 at 8-17. At the plea hearing, Judge Lalor asked petitioner "you have had some problems with the representation afforded you by the Public Defender's Office of Greene County; is that correct?" and "[t]hat is going to be the basis, if you take an appeal, of your appeal; is that correct?" Id. at 22. Petitioner answered "yes" to both questions. See id. Petitioner then pleaded guilty to one count of second-degree assault, and received a five-year sentence, to run consecutively with the twenty-five-year-to-life sentence petitioner was already serving. See id. at 29. After sentencing, Judge Lalor stated, "I

---

[3] The page numbers following Dkt. No. 6 refer to the pagination of the header numbers generated by CM/ECF, not the pagination provided in the transcripts.

[4] The page numbers following Dkt. No. 9 refer to the pagination of the header numbers generated by CM/ECF, not the pagination provided in the transcripts.

would ordinarily tell you that you have 30 days within which to appeal your conviction and your sentence, but my notes indicate you waived your right to appeal at the time you entered your plea." Dkt. No. 6 at 21.  Petitioner responded, "I did not. I did not waive my rights." Id.

In 2002, Petitioner wrote two letters to the Appellate Division, Third Department, asking if the assault conviction had been appealed.  See Dkt No. 5-1 at 6-7.  The Appellate Division responded to both letters individually, informing petitioner twice that the court had no record of an appeal.  See Dkt. No. 6 at 59-60.  Between 2001 and 2012, petitioner litigated several pro se actions regarding the conditions of his confinement.  See Resp. Mem. of Law at 7-8; Peoples v. Beldock, No. 01-CV-6326L, 212 F. Supp. 2d 141 (W.D.N.Y. 2002); Matter of Peoples v. Fischer, 92 A.D.3d 1008 (N.Y. App. Div.).

## II. Discussion

### A. The AEDPA

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 USC § 2254(d)(1)-(2).  In an evaluation of a habeas petition, "a determination of a factual issue made by a state court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. § 2254(e)(1).

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  When a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's "unreasonable application" clause.  Id. at 409.  ". . . [a] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  Id.

### B.  Timeliness

The AEDPA imposes a one-year statute of limitations period for the filing of a habeas corpus petition to a federal court from a person in custody of a state court.  See 28 U.S.C. § 2244.  The AEDPA provides:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of a direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claims or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). For purposes of the present motion, 28 U.S.C. § 2244(d)(1)(A) is relevant. 28 U.S.C. § 2244(d)(1)(A). "Pursuant to the AEDPA, a prisoner must file a habeas petition challenging a state court judgment of conviction within one year of the date the judgment of conviction becomes final." Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002) (citing 28 U.S.C. § 2244(d)(1)(A)). N.Y. Criminal Procedure Law § 460.10(1)(a) governs the time in which a notice of appeal must be filed following a conviction and provides that:

> A party seeking to appeal from a judgment or sentence . . . must, within thirty days after imposition of the sentence . . . file with the clerk of the criminal court in which such sentence was imposed or in which such order was entered a written notice of appeal, in duplicate, stating that such party appeals therefrom to a designated appellate court.

N.Y. CRIM. PROC. LAW § 460.10(1)(a). It is well established in the Second Circuit that a state court judgment becomes final — and the one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(A) begins to run — when the petitioner's "time for filing a notice of

6

appeal from his judgment of conviction expire[s]." See, e.g., Bethea, 293 F.3d at 578 (citing N.Y. CRIM. PROC. LAW § 460.10(1)(a)) (finding that a petitioner's judgement of conviction became final on April 9, 1999, after the petitioner was sentenced in state court on March 10, 1999.). A state court judgment becomes final ninety days after the conclusion of direct review by state appellate courts. See Rose v. Lee, No. 9:13-CV-299 (MAD/ATB), 2015 WL 729817, at *10 (N.D.N.Y. Feb. 19, 2015) ("If a direct appeal is filed, the judgment of conviction becomes final ninety days after the date that the New York Court of Appeals denies leave to appeal.").

Section 2244(d)(1)(A)'s limitations period will be "tolled during the pendency of a properly filed petition for collateral review in state court[ ]." Bethea, 293 F.3d at 578 (citing Artuz v. Bennett, 531 U.S. 4, 8-11 (2000), aff'g Bennett v. Artuz, 199 F.3d 116 (2d Cir. 1999)). Furthermore, the "proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). Such proceedings "cannot revive a time period that has already expired . . . [as t]o allow a belated state court collateral attack to revive the AEDPA limitations period would defeat the purpose of the AEDPA limit." Hale v. Sabourin, No. 9:08-CV-0768(LEK/DEP), 2010 WL 2105934, at *3 (N.D.N.Y. May 4, 2010), report and recommendation adopted by, 2010 WL 2044685 (N.D.N.Y. May 24, 2010) (citations omitted), (quoting Sorce v. Artuz, 73 F. Supp. 2d 292, 294 (E.D.N.Y.1999). The Second Circuit has made it clear that "[i]f the one-year period began anew when the state court denied collateral relief, then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional

7

petitions in state court." Smith, 208 F.3d at 17. "[T]he time that a habeas petition is pending in federal court is not exempted from the one-year limitations period." Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir. 2001) (citing Duncan v. Walker, 531 U.S. 991, 121 S. Ct. 2120, 150 L.Ed.2d 251 (2001)); see also Rose, 2015 WL 729817, at *7 (holding that the statute of limitations period was not tolled where petitioner pre-maturely filed a petition for a writ of habeas corpus).

Under 28 U.S.C. § 2244(d)(1)(D), the one-year limitations period will not begin to run until "the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The "factual predicate" of the claim refers to discovery of the facts themselves, and not petitioner's realization of conclusions drawn from them. See Rivas v. Fischer, 687 F.3d 514, 534-35 (2d Cir. 2012). In Wims v. United States, the Second Circuit held that the date of discovery can be identified by determining "when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed." Wims v. United States, 225 F .3d 186, 190 (2d Cir. 2000). The date of discovery is fact-specific, and dependent on factors such as discussions with counsel after sentencing, as well as conditions the petitioner was confined in. Id. Courts have generally held that periods of delay exceeding one year do not represent due diligence. See Morton v. Ercole, No. 1:08-VC-0252, 2010 WL 890036 at *2, (N.D.N.Y. Mar. 10, 2010). The Wims Court also differentiated section 2244(d)(1)(D) from a tolling provision, holding that this section "resets the limitation period's beginning date, moving it from the time when the conviction became final . . . to the later date on which the particular claim accrued." Wims, 225 F.3d at 190.

Here, petitioner received his state court sentence on November 25, 1997, and did not notify the court of an appeal within the thirty-day period post-sentencing. See Dkt. No. 6 at 14, 30. Therefore, the thirty-day period during which petitioner could have brought an appeal expired on December 25, 1997, and his conviction became final on that date. 28 U.S.C. § 2244(d)(1)(A); see Bethea, 293 F.3d at 578 (citing N.Y. CRIM. PROC. LAW § 460.10(1)). Petitioner had until December 25, 1998 to bring a habeas corpus petition within the one-year statute of limitations period but did not do so until May 25, 2017. See id.; see generally Pet. As such, petitioner's writ is several years late, and is therefore untimely under 28 USC § 2244(d)(1)(A).

Furthermore, petitioner is not entitled to statutory tolling under 28 USC § 2244(d)(2). Despite Judge Lalor's instructions at the time of sentencing that petitioner had thirty days to file an appeal, petitioner did not file any appeals regarding his November 25, 1997 judgment of conviction until he filed the August 2016 § 440.10 motion, which was denied on October 19, 2016. Dkt. No. 6 at 24, 46. Petitioner's leave to appeal, filed on February 27, 2017, was denied by the New York Court of Appeals on May 4, 2017. Pet. at 16. Additionally, petitioner filed a writ of error coram nobis on November 28, 2016, which was denied on January 19, 2017. Dkt. No. 6 at 56, 58. Because 28 USC § 2244(d)(2) only applies to toll the statute of limitations when applications are filed within the one-year limitations period, petitioner's § 440.10 motion; writ of error coram nobis; and leave to appeal, filed in 2016 and 2017, were all filed significantly past the expiration of the one-year statute of limitations period for a habeas corpus petition. See 28 USC § 2244(d)(2). The filing of these applications cannot restart the limitations period; therefore, the petition is untimely. See id.

Further, petitioner's writ is untimely under 28 U.S.C. § 2244(d)(1)(D). In 2002, petitioner received letters from the Appellate Division stating that there was no record of an appeal as to his assault conviction. See Dkt. No. 6 at 59-60. Even if a reasonably diligent person in petitioner's position would have discovered that an appeal had not been filed prior to receiving the letters from the Appellate Division, an approximate fifteen-year gap exists between the date the petitioner received the responses, (id.) and the date the petitioner submitted his application for habeas corpus. See Pet. The precise date petitioner received these responses from the Appellate Division, and, therefore, definitively learned that no appeal had been filed, is unclear. However, the one-year statute of limitations for his petition expired in 2003 — one year after the date he received these letters. See 28 U.S.C. § 2244(d)(1)(D). Accordingly, petitioner's writ is barred by the statute of limitations. See id.

### C. Equitable Tolling

Equitable tolling of the statute of limitations is only applied in the "rare and exceptional circumstance[ ]." Smith v. McGinnis, 208 F.3d 13, 16 (2d Cir. 2000) (quoting Turner v. Johnson, 177 F.3d 390, 392 (2d Cir. 1999)). A petitioner is only entitled to equitable tolling if he makes a showing that "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). A petitioner may satisfy the first requirement by establishing that he has "acted as diligently as reasonably could have been expected under the circumstances." Baldayuque v. United States, 338 F.3d 145, 153 (2d Cir.

10

2003). A claim of extraordinary circumstances is assessed through an evaluation of "how severe of an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period" and not through evaluating "how unusual the circumstance alleged to warrant tolling is among the universe of prisoners." Diaz v. Kelley, 515 F.3d 149, 154 (2d Cir. 2008). A petitioner seeking equitable tolling must demonstrate "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir.2000). Therefore, the extraordinary circumstances themselves are required to have prevented the timely filing of the application. See Harper v. Ecole, 684 F.3d 132, 137 (2d Cir. 2011). The equitable toll will end when the petitioner learns that the extraordinary circumstances that thwarted his or her efforts to appeal a conviction have ended. See Herring v. Superintendent, No. 1:09-CV-7610, 2010 WL 5463869, at *6 (S.D.N.Y. Dec. 2. 2010).

Courts have regularly held that petitioners whose conduct demonstrates that they have been able to investigate and pursue other legal avenues through the time period at issue are not entitled to equitable tolling throughout the period that they have been exercising other legal rights. See De Los Santos v. Ercole, No. 07-CV-7569, 2013 WL 1189474, at *7 (S.D.N.Y. Mar. 22, 2013). Additionally, ignorance of the law is insufficient to equitably toll the statute of limitations. See Sanders v. Chappius, No. 12-CV-3339(BSJ)(JCF), 2012 WL 6756238 at *6 (S.D.N.Y. Nov. 9, 2012).

Petitioner claims that he waited until 2002 to inquire as to his appeal because he was placed in the Secure Housing Unit for "a little over two years" and was unable to research the law. See Dkt. No. 12 at 6-7. Plaintiff claims that in the "latter portion of 2000," he learned of the one-year statute of limitations and, therefore, did not pursue a habeas corpus petition until 2016 as he believed it to be a "lost cause" and a lack of "proper guidance" made legal research a "nearly impossible task." See id. Even if the statute of limitations could have been tolled until petitioner obtained the ability to conduct legal research, the limitations period would then have expired, at the latest, in the latter portion of 2002, one year after he did obtain this ability. See id; 28 U.S.C. § 2244; Herring, 2010 WL 5463869, at *6. Petitioner would not have been entitled to tolling after this point as his inaction in pursuing an application demonstrates a failure to act with the reasonable diligence required. Hizbullahhankhamon, 255 F.3d at 76; Dkt. No. 12 at 7. Moreover, petitioner does not explain how his belief that an appeal would be a 'lost cause" prevented him from filing an appeal. See Hizbullahhankhamon, 255 F.3d at 76; Dkt. No. 12 at 7. Additionally, because the petitioner demonstrated that he had obtained the ability to conduct legal research in 2001 by engaging in unrelated pro se litigation, he would not be entitled to equitable tolling throughout the time period that he exercised other legal rights. See De Los Santos, 2013 WL 1189474, at *7; Resp. Mem. of Law at 8.

A habeas petitioner may be entitled to equitable tolling of the one-year statute of limitations for their petition if they can show that their counsel was ineffective. See Baldayuque, 338 F.3d at 152. Attorney error consisting of "simple mistakes or ordinary negligence" will not constitute the extraordinary circumstances required to toll the

12

AEDPA limitations period. Id. However, the limitations period may be tolled by behavior that is "so outrageous or so incompetent as to render it extraordinary." Id. An equitable toll can be applied due to ineffective assistance of counsel when counsel's failure to file an appeal is professionally unreasonable. See Herring, 2010 WL 5463869, at *5 (citing Roe v. Flores–Ortega, 528 U.S. 470, 483 (2000)). Nevertheless, a toll on this basis terminates when petitioner learns that the desired appeal was never filed. See Herring, 2010 WL 5463869 at *6.

Assuming that petitioner could demonstrate that counsel's failure to file a notice of appeal qualifies as an extraordinary circumstance and that he diligently pursued his rights between sentencing and 2002, any equitable tolling on the basis of ineffective assistance of counsel would have ended on petitioner receiving notification that the court had no record of an appeal filed on his behalf. See Herring, 2010 WL 5463869, at *6. Petitioner does not make any claims that his multiple-year delay in filing his appeal after he was informed that one had not been filed was related to or caused by ineffective assistance of counsel. Instead, petitioner claims that this delay was due to his belief that an appeal was "a lost cause." Dkt. No. 12 at 7. Therefore, petitioner is not entitled to an equitable toll on the basis of ineffective assistance of counsel.

### D. Ineffective Assistance of Counsel

The Sixth Amendment mandates that "in all criminal prosecutions, the accused shall enjoy the right . . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759,771 n.14 (1970). Under Strickland v.

Washington, a petitioner bringing an ineffective assistance of counsel claim must show that counsel's performance was (1) deficient and (2) that such deficient performance caused petitioner actual prejudice.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).

Counsel's performance will be deficient when it falls "below an objective standard of reasonableness." Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 688).  In cases where petitions for habeas corpus are brought on the grounds of ineffective assistance of counsel due to counsel's failure to file an appeal, "the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal."  Roe v. Flores Ortega, 528 U.S. 470, 478 (2000).  If counsel did not consult with his or her client, the court must ask if "the failure to consult with the defendant itself constitutes deficient performance." Id.  Counsel is required to consult with a defendant when "there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.  To "consult" means to advise the defendant as to "the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id.  at 478.

As to the second prong of the Strickland test, a showing of "prejudice," requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Federal Courts apply a "highly deferential" standard of review for a claim of ineffective assistance of counsel alleged in a habeas corpus petition. See Premo v. Moore, 562 U.S. 115, 122-23 (2011) (collecting cases). In assessing a habeas corpus claim, "the question is not whether counsel's actions were reasonable . . . [but it is] whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 123 (internal quotation marks and citation omitted). ". . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

In his writ for habeas corpus, petitioner contends that counsel's representation was deficient due to counsel's failure to submit a notice of appeal on his behalf, therefore, denying petitioner's right to a direct appeal. See Dkt. No. 1 at 5. Petitioner does not allege that he instructed his counsel to file an appeal. Petitioner states in his affidavit in support of his petition for writ of coram nobis that counsel should have inferred his desire to file an appeal when the petitioner asserted at his sentencing that he had "not waived his rights [to appeal]." Dkt. No. 6 at 53. Petitioner further contends that he did not receive information on his right to appeal from Mr. Lubow. Id. at 54. The record does not show evidence of a consultation regarding an appeal between petitioner and Mr. Lubow. However, the record does show that petitioner was instructed by the court, with counsel present, as to his right to appeal within thirty days of his sentencing. Dkt. No. 6 at 21. Additionally, petitioner asserted that any potential appeal

that he wished to bring would be brought on the basis of ineffective assistance of counsel. Dkt. No. 9 at 22. Therefore, counsel may have had a reasonable basis to believe that if the petitioner filed an appeal, it would be for ineffective assistance of counsel.

Even assuming counsel's failure to file an appeal amounted to deficient performance, petitioner cannot meet Strickland's requirement of "prejudice." Strickland, 466 U.S. at 694. Petitioner makes no showing of prejudice as a result of counsel's failure to file an appeal, as neither his petition for habeas corpus nor his writ of coram nobis state any specific arguments that petitioner would have advanced on appeal. In petitioner's traverse and petition for habeas corpus, petitioner does state his interest in "fighting" his conviction. Dkt. No. 12 at 2; Pet. at 5. However, petitioner fails to demonstrate a reasonable probability that his "fight" would be successful on appeal. Id; Strickland, 466 U.S. at 694. Accordingly, because petitioner has failed to satisfy both prongs of Strickland, it is recommended that his petition be denied.

### E. Denial of Petitioner's Writ of Error Coram Nobis

As explained in C.P.L. § 460.10(1)(a), "a defendant who wishes to appeal a sentence must do so within thirty days of its imposition." C.P.L. § 460.10(1)(a). C.P.L. § 460.30(1) allows an appellate court to extend the time allowed for an appeal up to one year after the thirty days have expired. Id. § 460.30(1). Under People v. Syville, an exception can be made to further extend this one-year grace period when a petitioner brings a writ of coram nobis on the ground of ineffective assistance of counsel when (1) an attorney fails to "comply with a timely request for the filing of a notice of appeal"

16

and (2) the "defendant alleges that the omission could not reasonably have been discovered within the one-year period." People v. Syville, 15 N.Y. 391, 400-01 (2010).[5] Pursuant to People v. Rosario, the period in which a defendant can bring a writ for coram nobis should not be extended when the record shows that the defendant (1) failed to establish that counsel was "unconstitutionally ineffective" by failing to apprise defendants of their appellate rights during plea hearings, and (2) failed to show that they "took steps toward discovering omission or explain why years passed before they sought coram nobis relief." People v. Rosario, 26 N.Y.3d 597, 603-04 (2015). As further explained in Rosario, when "the records as a whole reveal that defendants knew about their right to appeal . . . to grant defendants relief . . . would be to broaden the Syville rule to any case where a notice of appeal had not been filed within one year and thirty days of conviction . . . . Such a rule would abrogate C.P.L. § 460.30." Id. at 603.

Petitioner was informed by the court at sentencing that he had the right to appeal within thirty days. Dkt. No. 6 at 21. Furthermore, petitioner demonstrated his understanding of this right to appeal when he asserted at sentencing that he had not waived this right. Id. Although petitioner demonstrated his awareness of his right to appeal on November 25, 1997, he (1) delayed in taking steps to inquire as to whether an appeal had been filed until 2002, see Dkt No. 5-1. at 4-5, (2) learned that no appeal had been filed in 2002, see Dkt. No. 6 at 59-60, and (3) then further delayed in bringing

---

[5] The "primary issue on appeal" in People v. Syville was "whether a defendant who discovers [sic] after the expiration of the CPL 460.30 grace period that a notice of appeal was not timely filed due to ineffective assistance of counsel has recourse through a coram nobis application. Syville 15 N.Y.3d at 397. The New York Court of Appeals ruled that "coram nobis is the appropriate procedural course in New York for a defendant to pursue a claim that "the right to appeal has been lost due solely due to the unconstitutionally deficient performance of counsel in failing to fail a timely notice of appeal." Id. at 397, 398. The remedy under a writ of coram nobis raising this kind of claim is to provide the defendant with an extended time to appeal, not to determine whether the arguments on appeal have merit or to grant relief on those claims. Id.

17

his writ for coram nobis until November of 2016. Dkt. No. 1 at 16. Therefore, because petitioner demonstrated his awareness of his ability to exercise his right to appeal and did not do so within the period allotted by § 460.30, he does not qualify for exceptional relief beyond the one month and one-year statute of limitations. Rosario, 26 N.Y.3d 603-04 (2015); C.P.L. § 460.30. Accordingly, it is recommended that petitioner's claim be denied.

### III. Conclusion

For the reasons stated herein, it is hereby,

**RECOMMENDED,** that Jalaal Peoples' petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED** that no certificate of appealability be issued with respect to any of Peoples' claims as Peoples has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.")' see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000); and it is

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: August 12, 2019
Albany, New York

*/s/ Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge